nothing is shown on his part but the intention to give, which is not enough. I am not satisfied, moreover, with the evidence produced to establish a gift of the furniture.

It rests upon the testimony of a single witness. That witness is the husband of the donee, and the executor who is required to account for it; and his testimony is too loose, vague, and general, to come up to the requisite of LORD ST. LEONARDS' rule. This applies equally to the gift of the wearing apparel. I should feel strongly disposed, if it were possible, to sustain the gift of the gold watch. That a dying father should desire especially to leave such a memento to an only son, and being absent, should give it to his daughter to be delivered to him, is most natural and probable; and that probability is heightened by the fact, that the watch was afterwards delivered by Mrs. Taylor to her brother. But the difficulty is, that there is no evidence whatever of the fact of the gift. Mr. Taylor does not swear to the knowledge of any declaration or act of the testator respecting it, but merely states his belief that it was so given, which is not enough to sustain a *donatio causa mortis*.

---

NEW YORK COUNTY—HON. CHARLES P. DALY, ACTING SURROGATE—
December, 1862.

## SNECKNER v. TAYLOR.

*In the Matter of the final Accounting of the Executor of* GEORGE W. MILLER, *deceased.*

On an accounting, one of the executors offered himself as a witness, to prove that certain property had never been in the actual possession of the executors, but had been given by the testator in his lifetime to his daughter (the wife of the witness), who was also a residuary legatee under the will. *Held*, that the testimony offered was not in violation of the common-law rule, that a husband cannot give testimony in favor of his wife, and must be admitted.

The question as to the validity of the alleged gifts *mortis causa* by the testator to Mrs. Taylor, the wife of the executor,

Alexander Taylor, was disposed of by the surrogate. (See *Delmotte* v. *Taylor, Ante,* 417). On the final accounting, the executors omitted to charge themselves, in their account, with the sum of $1,216, the appraised value of certain articles enumerated in the supplementary inventory as "furniture, &c., in possession of and claimed by the daughter of the testator, as having been given her by the testator during his lifetime."

William Sneckner and Mary J. Delmotte, legatees under the will, made such omission a ground of exception to the accounts, and alleged that the said articles "are in possession of the executors, or under their control, and that they are entitled to the same."

In support of this objection, the contestants called Wm. Sneckner, a party to this proceeding and one of the objectors, to show by him that some portion of the property in question was in the possession of the testator shortly before his death.

The surrogate held that Sneckner's testimony was sufficient, in the absence of rebuttal or explanation, to charge the executors with the property in question, as assets of the testator. Thereupon Alexander Taylor, one of the executors, offered himself as a witness to prove that said property was never in the actual possession of the executors, but was given by the testator, in his lifetime, to his daughter (the wife of said Taylor), who took immediate possession thereof.

Counsel for the objectors insisted that Taylor's testimony should be stricken out, on the ground that the witness was incompetent to testify for or against his wife, who, as a residuary legatee, was a party to the proceeding, and who claimed the property in question as a gift to her, *inter vivos.*

CHARLES F. SANFORD, *for the Executors.*

I. The common-law rule that husband and wife are incompetent witnesses for or against each other, where either is a party, or has an interest in the suit, has been held subject to exceptions. In collateral proceedings, not immedi-

ately affecting their mutual interests, their evidence is receivable, notwithstanding it may subject the other to, or exonerate the other from, a legal demand. (*Greenl.*, 342, and cases cited.) The reason is, that the verdict cannot be used in a subsequent action.

II. In the present case, the husband is not disqualified under the common-law rule. (1.) Although nominally a party to the record, being summoned in the citation, the witness's wife is not a party to the issue, which is tried simply as between the objectors and the executors. (2.) The adjudication of the surrogate would not be conclusive upon her, in any action between herself and the executors, for the recovery of the property in question. (3 *Rev. Stat.*, 5 ed., 181, § 71.) (3.) Her interest in the result is contingent and uncertain, depending upon the fact of a residuum after payment of debts and legacies. (*Richardson* v. *Learned*, 10 *Pick.*, 261.)

III. The statute, which authorizes an executor (as such) to be examined on oath, " touching any property or effects of the deceased which have come to his hands, and the disposition thereof," is broad enough to remove the common-law disability, and to render the testimony admissible. He does not occupy the position of witness for or against his wife, or any one else. He is the subject of an inquisitorial examination, by virtue of his official capacity and the statute. The statute expressly authorizes his examination (either on his own behalf or otherwise) touching such property and its disposition.

A. R. DYETT, *for Legatees and Objectors.*

I. The wife will be directly affected by the decision of the surrogate on this question. We seek to increase the value of the assets by this property. The executor seeks to decrease it by the omission of it. (1.) The order on this accounting will be conclusive evidence as to both increase and decrease of the value of any assets. (3 *Rev. Stat.*, 5 ed., 181, § 71, subd. 4; *Stiles* v. *Burch*, 5 *Paige*, 521; *Glover* v. *Holley*, 2

*Bradf.*, 29; 5 *Sandf.*, 380.)   (2.) By sections 78, 79, it is clear the statute intended to make the accounting final, and binding on all parties.  If the property in dispute were in the hands of the executor, the surrogate could order its distribution.   The fact that it is in the possession of Mrs. Taylor, does not alter the question of power in the surrogate to decide, so as to bind all parties.   A decision adverse to the objectors on this proceeding, will protect the wife of the witness; the decision will enure to her benefit, for while under the will she gets three-fourths of the residue, she gets, in addition, the whole of this property now in dispute.

II. The statute (3 *Rev. Stat.*, 5 ed., 179, § 60) allows the examination of the executor only as to property admitted or conceded to be the testator's.   It does not apply to the case of a contested claim of title between the estate and a third person.   In cases like *Ogilvie* v. *Ogilvie* (1 *Bradf.*, 356), if he be examined concerning any property claimed to belong to the deceased, and apparently charged by his own testimony, there is an obvious justice in permitting him to discharge himself.   But if the evidence be, *aliunde*, to charge him with property which he has not disposed of, and which has not come to his hands, and his excuse is that it is the property of another person, and has never come to his hands, he becomes a witness in chief, if he can in any case be examined, and such testimony does not come within the statutory examination; and if his wife be the claimant, he cannot be examined.

The Surrogate.—I shall allow the testimony of Mr. Taylor to be received in evidence.